UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND PALMER, on behalf of himself and all others similarly situated | ) ) ) | CASE NO: 1:22-cv-01515 |
| Plaintiff, | ) ) | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | ) ) | |
| CUYAHOGA COUNTY, | ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT** |
| Defendant. | ) ) ) | |

Pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), Plaintiff Raymond Palmer and Defendant Cuyahoga County respectfully and jointly move the Court to approve the proposed settlement memorialized in the Agreement of Settlement and Release ("Settlement Agreement") marked as Exhibit 1. The settlement resolves all claims of named Plaintiff Raymond Palmer under the FLSA, applicable state wage statutes, and the common law, as well as all claims of the Opt-In Plaintiffs under the FLSA.

The parties submit that the settlement is fair, reasonable, and adequate and qualifies for approval under the FLSA, 29 U.S.C. § 216(b). A resolution, pending this Court's approval, was finally reached after extensive discovery, settlement negotiations, and mediation with Magistrate Judge Parker. If approved by the Court, the settlement will provide settlement payments to the Plaintiff and Opt-Ins representing, by Plaintiff's counsel's analysis and estimate, a full recovery of their alleged unpaid overtime compensation making off-the-clock working time assumptions favorable to them.

The following settlement documents are submitted for the Court's consideration and approval:

Exhibit 1:     Agreement of Settlement and Release

Exhibit 2:     Table of Individual Payments

Exhibit 3:     Proposed Final Order Approving Settlement

Exhibit 4:     Declaration of Counsel

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed payments and distributions, and the propriety of approval.

## I.     THE ACTION

### A.     The Claims and Issues

On August 25, 2022, named Plaintiff Raymond Palmer commenced this Action on behalf of himself and all similarly situated corrections officers hired by Cuyahoga County between August 25, 2022 and the present.  His Complaint alleged that Cuyahoga County violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio's Prompt Pay Act, Ohio Rev. Code § 4113.15, and Ohio's common law of unjust enrichment, by mandating homework assignments to be completed off-the-clock during the initial orientation period.

Defendant answered the Complaint and denied liability or wrongdoing of any kind, and also moved for judgment on the pleadings with respect to Plaintiff's Prompt Pay Act claim, arguing that that statute does not apply to political subdivisions.  The parties stipulated to the dismissal of that claim.

### B.  Discovery and FLSA Certification

At the November 7, 2022 Case Management Conference, the Court requested that the parties submit a joint statement addressing the effect on scheduling of the then-pending Sixth Circuit *Clark v. A&L Home Care and Training Center* matter.  The parties proposed that, and this Court agreed, that the FLSA certification-related deadlines be stayed pending the *Clark* ruling, but the parties should otherwise begin discovery.

The parties engaged in discovery over the next 6-7 months, including by (a) exchanging thousands of pages of documents relevant to the putative class members' job descriptions and duties, relevant portions employee handbook and corporate policies, and timekeeping and pay matters, and (b) deposing Raymond Palmer, one of his co-workers, and several of Cuyahoga County's corrections and human resources staff with knowledge relevant to this matter.

### C. **Conditional Certification and Notice**

With the benefit of the discovery described above, on July 31, 2023, the Parties jointly filed with the Court a proposed stipulation for conditional certification of the Action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) and issuance of notice to potential opt-ins informing them of their right to join the Action by submitting consent forms. The stipulation was approved by the Court, notice was issued to current and former Cuyahoga County corrections officers, and 55 Opt-Ins joined the Action alongside Plaintiff by submitting consent forms filed with the Court.

### D. **Additional Discovery and Mediation**

After granting the stipulation for notice and consent, the Court ordered the parties to mediate the case after the close of the consent period, on January 18, 2024. During the opt-in period, undersigned counsel spoke with Opt-Ins as they joined the case and discussed other potential pay issues. Specifically, the aforementioned discovery, and follow-up discussion with Opt-Ins, revealed a potential dispute as to whether corrections officers' early arrivals and late departure to and from work at the jail were fully compensated. The parties chose a sample group of 10 Opt-Ins, and the County produced timekeeping and pay records to permit further analysis of that issue. With the Court's blessing, the mediation was continued one month to allow for that analysis to take place.

On February 26, 2024, the parties held a mediation with Magistrate Judge Parker and reached a proposed resolution detailed below.

### E. **The Proposed Settlement**

The proposed settlement provides settlement payments to Raymond Palmer and the Opt-Ins that represents a roughly 100% of their estimated overtime damages. The individual allocations to Raymond Palmer and the Opt-Ins are proportionate to their respective damages as analyzed by Plaintiff's counsel.

Plaintiff's counsel has thoroughly investigated the facts, including detailed analyses of the extensive documents and data assembled and exchanged by the parties. Based on that analysis, the Settlement plainly fair, adequate, and reasonable and is in the best interest of Plaintiff Palmer and the

Opt-Ins in light of all known facts and circumstances, including the risk of significant delay and Defendant's defenses.

The Parties agree that bona fide disputes exist regarding the claims at issue, including but not limited to: the amount of time spent by Plaintiff and the Opt-Ins, and whether Plaintiff and similarly situated persons were paid for their early arrival/late departure time. The proposed Settlement represents a fair compromise of disputed claims. Nothing in this Settlement is intended or will be construed as an admission by Defendant that the Plaintiff's claims have merit or that Defendant has any liability to Plaintiff or the Opt-Ins on those claims.

Wherefore, subject to approval by the Court, the Parties have reached a binding agreement to settle the Action upon the terms and conditions set forth herein.

## II.     THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b). Court approval is warranted on all scores.

### A.     The Seven-Factor Standard Is Satisfied

The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and the proposed settlement "is fair, reasonable, and adequate." *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). *Accord, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

In *Kritzer*, the court used seven factors to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20. *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing

4

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiff would have to establish not only Defendant's liability, which Defendant vehemently denies, but also the Plaintiff's and Opt-Ins' damages. Both were hotly disputed in this case. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiff and Opt-Ins.

Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiff would prevail at trial even at the level that was achieved in this settlement, and the litigation could be long and protracted. *See Kritzer,* 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation"). The recovery obtained for Plaintiff and the Opt-Ins equates to roughly 100% of their unpaid wage damages assuming an average weekly off-the-clock amount of time worked that is on the higher end of that estimated by polled Opt-Ins. *Declaration of Counsel*, at Exhibit 4, ¶ 8.

B.      **The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999).

In the present case, the Individual Payments to the Plaintiff and Opt-Ins represent a substantial percentage of their claimed damages. The damages claimed in the case derive from allegations of off-the-clock work. Defendant disputed that many of the hours at issue were compensable working time. The proposed settlement here provides for a distribution to the collective group that is a substantial

portion of their alleged damages, especially in light of Defendant's defenses and the risk of a defense-verdict at trial.

The proposed allocations to the group are equitable. The Table of Individual Payments allocates the settlement proceeds among the Plaintiff and Opt-Ins in proportion to their respective alleged damages as estimated by Plaintiff's counsel based on the number of weeks worked by each Opt-In.

### C.     The Service Award is Proper and Reasonable

Reasonable service awards "are common in class action settlement[s]and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*26 (citing *Rotuna v. West Customer Mgmt. Group*, LLC,No. 4:09cv1608, 2010 WL 2490989, at \*7. *Accord*, *In re Dunn & Bradstreet Credit Services Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The proposed settlement provides a service award to Plaintiff Raymond Palmer in the amount of $3,500.00 in recognition of his assistance to Plaintiff's Counsel and his substantial efforts to achieving the settlement. Mr. Palmer attended numerous meetings with counsel, brought the case in his name, provided very critical records substantiating the claims at issue, gave a deposition, prepared with counsel in advance of mediation, and attended the mediation.

### D.     Plaintiff's Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus

"encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).  *Accord, Kritzer,* 2012 U.S. Dist. LEXIS 74994, at \*28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson,* 465 U.S. 886, 897 (1984)).

In *Gascho v. Global Fitness Holdings, Inc.,* 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed its long-standing rule regarding class- and collective-action fee awards.  "When awarding attorney's fees in a class action," *Gascho* emphasized, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho,* 822 F.3d at 279 (quoting *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993)).  Court have discretion to select the appropriate method of determining such fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Gascho,* 822 F.3d at 279 (citing *Rawlings,* 9 F.3d at 516).

The percentage approach "more accurately reflects the results achieved." *Rawlings,* 9 F.3d at 516, *quoted with approval in Gascho,* 822 F.3d at 279-80.  It is appropriate in cases like this one because "it encourages early settlement, which avoids protracted litigation." *Gascho,* 822 F.3d at 279 (citing *Rawlings,* 9 F.3d at 516-17).

Applying *Fegley* and *Rawlings,* courts in the Sixth Circuit commonly approve one-third fee awards in FLSA collective actions.  *See, e.g., Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at \*21 (N.D. Ohio Mar. 8, 2010) (citing *Rawlings* as well as *Jackson v. Papa John's,* Case No. 1:08CV2791 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D. Ohio 2007)); *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007).  *Accord, Feiertag v. DDP Holdings, LLC,* No. 14-CV-2643, 2016 WL 4721208, at \*1 (S.D. Ohio Sept. 9, 2016) (approving 30% award.)

Courts reference the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000). *See Dillworth*, 2010 WL 776933, at *19-20; *Bessey*. 2007 WL 3173972, at *4 (citing study conducted by the National Economic Research Associates). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12).

Measured by the NERA benchmarks, the proposed settlement in the present case is exemplary. The settlement primarily benefits the Plaintiff and Opt-Ins. *See Gascho*, 822 F.3d at 282 (counseling courts to consider "the benefit to the class and its ratio to attorney's fees"). Nearly two-thirds of the Total Settlement Amount is allocated to Plaintiff and Opt-Ins, and the Individual Payments they will receive represent roughly all of their lost wage damages.

Less than one-third of the settlement is allocated to Plaintiffs' Counsel to cover attorney's fees. *Declaration of Counsel*, at Exhibit 4, ¶ 11. The proposed fee was well-earned. Over the course of roughly 1.5 years, Plaintiff's Counsel obtained significant discovery permitting a detailed and accurate analysis of alleged damages and finding pay issues not identified at the time of the filing of this case. Analysis of damages involved tedious and extensive extraction, culling, and manipulation of electronic data to compare the paid shifts against total hours worked, and conversion of that data into calculation into amounts alleged to be still owed to the Plaintiff and Opt-Ins.

Against that background, the settlement ultimately achieved in this case is a great success. Again, even after attorneys' fees and reimbursement of case expenses, the proposed settlement payments to the Plaintiff and Opt-Ins represent roughly all of their potentially recoverable overtime damages.

## III.  <u>CONCLUSION</u>

For the reasons addressed above, the parties respectfully request that the Court approve the settlement by entering the proposed order attached as Exhibit 3.

Respectfully submitted,

*s/ Scott D. Perlmuter*
SCOTT D. PERLMUTER (0082856)
Tittle & Perlmuter
4106 Bridge Avenue
Ph.: (216) 222-2222
Fax: (888) 604-9299
scott@tittlelawfirm.com

Counsel for Plaintiff

and

*s/ Brendan Healy*
BRENDAN D. HEALY (0081225)
REGINA A. RUSSO (0100295)
Assistant Prosecuting Attorneys
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Tel: (216) 698-6447
Fax: (216) 443-7602
Email: bhealy@prosecutor.cuyahogacounty.us

## PROOF OF SERVICE

I certify that on this _____, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)